UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.                                                    Case No. 23-cr-48-wmc

CALVIN M. HENDERSON, SR.,

    *Defendant.*

---

## MOTION TO SUPPRESS

Calvin M. Henderson, Sr., by counsel, respectfully moves to suppress all evidence resulting from the illegal search of 2401 Post Road, apartment 207, and any fruits of that search. Officers entered Henderson's apartment without a warrant and without consent, in violation of his Constitutional rights. The Fourth Amendment forbids this warrantless entry into one's home. Henderson is requesting an evidentiary hearing on this motion in order to resolve factual disputes between parties.

I. **The investigation.**

Right before three in the afternoon on January 26, 2023, at least six officers wearing military-style uniforms and armed with assault-style rifles entered Henderson's home. They did not have a warrant, and Henderson did not consent to their entry. These officers ordered everyone out of the apartment, including Henderson, who was only wearing underwear. He was made to stand in the hallway, handcuffed behind his back, until an officer reentered the apartment to find clothes for him to wear.

1

After entering and roaming through the apartment, officers allegedly saw drugs, drug paraphernalia, and ammunition. An officer remained inside the apartment with the door open, and other officers would drift in and out of the home. Neither Henderson, nor any other civilian, was allowed to reenter.

Officer Trundle authored an affidavit in support of a search warrant for the apartment.[1] Trundle included information gathered after the unlawful entry into the residence:

> Calvin Henderson allowed officers into the residence. Officers conducted a protective sweep after consent was given for entry. Detective Wiza reports he observed in plain view a firearm magazine and rifle ammunition. Detective Wiza further reports he observed a razor blade and a plate next to the toilet with a white powdery substance on the floor in the bathroom next to the toilet.[2]

Trundle, in a supplemental report,[3] wrote that at the time of the initial entry into apartment 207, "the warrant was still being written and was almost in the process of being sent to a Dane County Judge to be reviewed and signed." The search warrant was eventually signed, and officers continued an extensive search of the apartment at approximately five in the evening. As a result of that search, Henderson is charged by indictment with one count of possessing firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1).[4]

---

[1] Exh. 1, Affidavit in Support of Search Warrant.
[2] *Id.*
[3] Exh. 2, Trundle Supplemental Report.
[4] R.1.

2

Trundle's affidavit in support of the warrant explains that his investigation began after a shooting occurred outside the apartment complex on December 4, 2022.[5] A month after the shooting, on January 4, 2023, a "Citizen Witness" (CW) told Trundle that "Sam" was involved in a disagreement that led to the shooting, but the CW did not know who shot any firearms.[6] CW believed "Sam" lived with "Calvin" at 2401 Post Road in apartment 207. Other informants supplied information to Trundle and other officers regarding drug sales and firearm possession at the apartment.[7] One informant, Mr. Ballesteros, was arrested several hours before the January 26 search. Ballesteros was arrested with a gram of heroin on his person. He told officers that he had been living at the Post Road apartment, and "Sam" supplied the drugs to him.[8] He also told officers that various drugs and four firearms were kept at the residence. Trundle then confirmed with the apartment manager that Henderson is the lease holder at the residence.[9]

---

[5] Exh. 1 at 803.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 805.
[9] *Id.* at 806.

II. **Officers entered the apartment without a warrant and without consent in violation of the Fourth Amendment.**

"It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."[10] The Fourth Amendment protects the "security of one's privacy" and a search of a residence conducted without a warrant is "per se unreasonable."[11] Numerous armed officers, as well as a K9, entered Henderson's residence without a warrant, without permission, and without an applicable exception to the warrant requirement.

The affidavit in support of the warrant includes information regarding the initial entry into the apartment, but calls this entry a "protective sweep."[12] It is worth taking the time to define what a protective sweep entails. First, "the underlying rationale for the protective sweep doctrine is the principle that police officers should be able to ensure their safety when they *lawfully* enter a private dwelling."[13] Officers mislabel their entry into Henderson's home—this is not a protective sweep, and they were not lawfully present. "A protective sweep "is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."[14] It does not entail continuing to occupy the residence for hours, allowing officers to come and go.

---

[10] *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (internal quotation and citation omitted).
[11] *Schneckloth v. Bustamonte*, 412 U.S. 218, 242 (1973).
[12] Exh. 1 at 807.
[13] *Leaf v. Shelnutt*, 400 F.3d 1070, 1087 (7th Cir. 2005) (emphasis mine).
[14] *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

The fact remains: labeling the entry as a protective sweep does not transform what officers did into a legal entry into the apartment. A "protective sweep" cannot be trotted out as a theory when officers simply prefer to enter a dwelling at that moment, without a warrant, because they want to. Detective Trundle writes that at the time of entry, "it was determined that there was enough law enforcement personnel in place to initiate a knock at apartment #207."[15] There is no explanation as to why officers did not obtain a search warrant first. Which would be perfectly fine if, as Trundle wrote (after gathering this information from another officer, as he was, to the best of undersigned's knowledge, not at the residence) "[Henderson] provided law enforcement consent to enter the residence."[16] But, Henderson did not. And so, without permission, officers entered his home.

III. **Conclusion**

As demonstrated here, "the sweep is a device that can easily be perverted to achieve ends other than those acknowledged as legitimate in *Buie*."[17] Under the guise of a protective sweep, numerous officers entered Henderson's apartment without permission and without a warrant. No exception to the warrant requirement applies, and therefore, the search of the apartment was invalid and its fruits must be suppressed.

---

[15] Exh. 2
[16] *Id.*
[17] *United States v. Starnes,* 741 F.3d 804, 810-11 (7th Cir. 2013) (quoting *United States v. Burrows,* 48 F.3d 1011, 1017 (7th Cir. 1995)).

5

Dated at Madison, Wisconsin, this 21st day of June, 2023.

                Respectfully submitted,

                Calvin M. Henderson, Sr., Defendant

                */s/ Elizabeth Blair*
                Elizabeth Blair
                Associate Federal Defender
                FEDERAL DEFENDER SERVICES
                    OF WISCONSIN, INC.
                22 East Mifflin Street, Suite 1000
                Madison, Wisconsin 53703
                Tel: 608-260-9900
                Fax: 608-260-9901